## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY

|  |  |
|---|---|
| **PRAIRIE POINTE ORTHODONTICS, P.A.**, on behalf of itself and all others similarly situated, | |
| **Plaintiff,** | **Case No. 2:23-cv-2073** |
| v. | **CLASS ACTION** |
| **VADIM PINSKIY, INDIVIDUALLY AND D/B/A NEXUS, AND JOHN DOES 1-10,** | |
| **Defendants.** | |

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
### UNDER 47 U.S.C. § 227 *ET SEQ.* (TELEPHONE CONSUMER PROTECTION ACT)

Vadim Pinskiy, individually and doing business Nexus AI, Inc. ("Nexus") and illegally transmitted unsolicited junk faxes to Plaintiff Prairie Pointe Orthodontics, P.A. ("Prairie Pointe"), and others. (*See* **Exhibit A** hereto.) These junk faxes were illegal under the Telephone Consumer Protection Act, 47 U.S.C. § 227, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), and the regulations promulgated under it (collectively, the "TCPA"). Prairie Pointe hereby files this Class Action Complaint against Defendant for violating the TCPA. Prairie Pointe seeks to represent not just itself, but also to vindicate the rights of all other persons or entities similarly situated.

### NATURE OF ACTION

1.    This case involves the unauthorized and unsolicited transmission of facsimiles to Prairie Pointe Orthodontics, P.A. from Nexus and its co-founder and Chief Operations Officer Vadim Pinskiy.

2.    Defendant has violated the TCPA by sending, via facsimile, unsolicited advertisements to Prairie Pointe and the putative Class Members without Prairie Pointe's and the putative Class Members' prior express consent within the meaning of the TCPA.

3.    Prairie Pointe brings this action for injunctive relief and statutory damages, all arising from the illegal activities of Defendants.

## JURISDICTION AND VENUE

4.    The claims of the putative Class represented by Prairie Pointe arise under the TCPA – a federal statute. Therefore, this Court has original jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (*i.e.*, original federal question jurisdiction).

5.    This Court also independently has subject matter jurisdiction over this case based on diversity of citizenship under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the citizenship of the parties is diverse.

6.    This Court also may have subject matter jurisdiction under the Class Action Fairness Act.

7.    This Court has specific personal jurisdiction over Defendant because Defendant targeted consumers with advertisements in Kansas and this District, including to Plaintiff, who resides in Johnson County, Kansas.  Defendant's marketing directed to residents of Kansas is the subject of this dispute from which this lawsuit arises.

8.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial amount of the conduct and events giving rise to this case, the transmission of unsolicited fax advertisements directed to and received by residents of Kansas including those sent to Prairie Pointe, occurred in this District, and Prairie Pointe has its principal place of business in this District.

## PARTIES

9.      Plaintiff Prairie Pointe Orthodontics, P.A., is a domestic corporation of the state of Kansas, owned and operated by Dr. Eric Neuer. Among other business activities, Prairie Pointe Orthodontics, P.A. provides dental services to the residents of the State of Kansas and is hereinafter referred to as "Prairie Pointe."

10.      Nexus is a company that Pinskiy claims to have founded. It is unclear if Nexus is a registered company.  Upon information and belief, Pinskiy does business as "Nexus." To the extent that Nexus is a registered company or an informal association, Plaintiff also names "John Does" who owned, operated, managed, and are otherwise liable for the acts described herein.

11.      Defendant Vadim Pinskiy's LinkedIn Profile is attached as **Exhibit B** hereto. According to his LinkedIn profile, Pinskiy is the "Co-Founder" and "COO" of Nexus. Upon information and belief, his residential address is 674 Orchard Lane, Franklin Lakes, NJ. As reflected on the fax itself, Pinskiy directly and personally participated or otherwise the creation, publication, broadcasting, and faxing of the document on the fax machine by Prairie Pointe in violation of the TCPA.

12.      Defendants Nexus and Pinskiy are hereinafter referred to collectively as "Defendants."

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

13.      The Telephone Consumer Protection Act of 1991, Pub. L. 102-243, § 3(a), added Section 227 to Title 47 of the United States Code.  47 U.S.C. § 227 was last amended in 2005. In pertinent part, 47 U.S.C. § 227(b) provides as follows: "It shall be unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine[.]"

3

14.    47 C.F.R. § 64.1200(a) is a regulation prescribed under 47 U.S.C. § 227(b) and effective as of December 20, 1992. In pertinent part, it provides that "No person may . . . [u]se a telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine."

15.    As used in both 47 U.S.C. § 227 and 47 C.F.R. 64.1200, "[t]he term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission[.]" (47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(f)(16).)

16.    Paragraph (3) of 47 U.S.C. § 227(b) provides:

(3) Private right of action

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

17.    The Junk Fax Prevention Act of 2005 ("JFPA") amended the TCPA to strengthen the prohibition against the sending of unsolicited advertisements. Following the JFPA, the TCPA requires that senders of faxed advertisements place a clear, conspicuous, and particular notice (hereinafter, the "Opt-Out Notice") on the first page of the transmission giving owners of the telephone lines and fax machines the right, and means, to stop unwanted faxed advertisements. By

default, the transmission of an unsolicited advertising fax is illegal under the TCPA. However, the

inclusion of a ***fully*** compliant Opt-Out Notice can provide a defense to liability.

18.     Under the TCPA and associated regulations, an Opt-Out Notice is legally compliant

only if ***all*** of the following is true:

(1) The fax contains conspicuous opt-out language on the first page (47 C.F.R.
§ 64.1200(a)(4)(iii)(A))

(2) The fax contains a statement that the recipient may make a request to opt-out of
receiving future faxed advertisements (47 C.F.R. § 64.1200(a)(4)(iii)(B).)

(3) The fax contains a statement that the sender must honor a recipient's opt-out
request within 30 days and that the sender's failure to do so is unlawful (47
C.F.R. § 64.1200(a)(4)(iii)(B).)

(4) The fax sets forth the requirements for an effective opt-out request (47 C.F.R.
§ 64.1200(a)(4)(iii)(C)), including that, *inter alia*, the request must (a) identify
the number of the fax machine to which the opt-out request relates; and (b) is
complaint only if, after the initial opt-out request, the recipient does not provide
express permission for the sender to send fax advertisements (*see* 47 C.F.R.
§ 64.1200(a)(4)(iv).)

(5) The fax provides a domestic contact telephone number and a fax number by
which the recipient may transmit the opt-out request (47
C.F.R. § 64.1200(a)(4)(iii)(D)(1)) or, if those numbers are not toll-free, set out
a separate cost-free mechanism for that purpose (47 C.F.R. §
64.1200(a)(4)(iii)(D)(2)).

(6) The fax ensures that the toll-free numbers or alternative cost-free mechanism
permit the recipient to make an opt-out request 24 hours a day, 7 days per week.
(47 C.F.R. § 64.1200(a)(4)(E).)

## FACTUAL ALLEGATIONS

19.     Prairie Pointe has, and at all relevant times had, fax service at (913) 393-3599 for

its offices located at 10044 Woodland Road, Lenexa, Johnson County, Kansas.  Prairie Pointe

receives facsimile transmissions ("faxes") at that number, using a telephone facsimile machine

("fax machine").

20.     On or about December 26, 2022, Prairie Pointe received in hard copy on its fax machine the fax attached as **Exhibit A** hereto. The transmittal sheet for the fax states that it is "FROM: Vadim Pinskiy NEXUS" and that it attaches an "advertisement":

```
Dear Receiver,
 Please direct the message below and the attached advertisement to
the Doctor's attention or place into their mailbox. This is a great
opportunity and one that they do not want to miss.
```

By the transmittal's own description, the attachment is an "advertisement" that advertises Nexus's services, promising to reimburse the fax recipient in return for referring patients to Nexus.

21.     The QR Code on the fax links to the email address clinicaltrials@nexus.science.

22.     "Nexus.science" is a web address, a full printout of which is attached as **Exhibit C** hereto. At the bottom of Nexus page, it identifies "Nexus AI Inc" as the site's sponsor.

23.     The fax received by Prairie Pointe was wholly unsolicited.

24.     There was no established business relationship between Prairie Pointe and Pinskiy/Nexus at the time the faxes were sent to Prairie Pointe's fax machine.

25.     Defendant is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

26.     Upon information and belief, Defendant paid for, authorized, and directed the unsolicited and unauthorized faxes to Prairie Pointe and members of the putative Class.

27.     The fax contained in **Exhibit A** does not have an Opt-Out Notice that fully complies with the requirements of 47 C.F.R. 64.1200(a)(4)(iii). Specifically, the fax in **Exhibit A** does not comply with the TCPA Opt-Notice requirements in multiple respects, including but not limited to the following failures:

> (1) In violation of 47 C.F.R. § 64.1200(a)(4)(iii)(A), the fax does not have conspicuous opt-out language on the first page.

6

(2) In violation of 47 C.F.R. § 64.1200(a)(4)(iii)(B)), the fax does not contain a statement that the recipient may make a request to opt-out of receiving future faxed advertisements.

(3) In violation of 47 C.F.R. § 64.1200(a)(4)(iii)(B)), the fax does not contain a statement that the sender must honor a recipient's opt-out request within 30 days and that the sender's failure to do so is unlawful.

(4) In violation of (47 C.F.R. § 64.1200(a)(4)(iii)(C)), the notice does not set forth the requirements for an effective opt-out request including that, *inter alia*, the request must (a) identify the number of the fax machine to which the opt-out request relates; and (b) is complaint only if, after the initial opt-out request, the recipient does not provide express permission for the sender to send fax advertisements (*see* 47 C.F.R. § 64.1200(a)(4)(iv).)

(5) In violation of 47 C.F.R.  § 64.1200(a)(4)(iii)(D), the fax neither (a) provides a domestic contact telephone number and a fax number by which the recipient may transmit the opt-out request nor, (b) if those numbers are not toll-free, sets out a separate cost-free mechanism for that purpose; and

(6) In violation of 47 C.F.R. § 64.1200(a)(4)(E), the fax does not ensure that any toll-free numbers or alternative cost-free mechanism permit the recipient to make an opt-out request 24 hours a day, 7 days per week.

28.     Defendant, and/or Defendant's employees and/or agents, created the fax in **Exhibit A**, and had the capability to control the contents thereof.

29.     Defendant, and/or Defendant's employees and/or agents, determined the fax telephone numbers to which the faxes contained in **Exhibit A** were sent to Prairie Pointe and other recipients.

30.     Upon information and belief, Defendant sent the fax transmissions of **Exhibits A** to thousands of telephone facsimile machines located in Kansas and other states offering their business.

31.     These transmissions of the fax contained in **Exhibit A** were made for the purpose of advertising the commercial availability of goods and services available from Defendant.

32.     Prairie Pointe further alleges that in each instance Defendant did so willfully or knowingly.

33.     Prairie Pointe further alleges on information and belief that in each instance Defendant had actual notice of participation, or a high degree of involvement, in a plan to transmit unsolicited advertisements to telephone facsimile machines (by, for example, knowing the that the transmitted faxes were advertisements or participating in preparing their content, providing or obtaining the fax telephone number of Prairie Pointe or other recipients, and knowing that Plaintiff and/or other recipients had not authorized the faxes' transmission by prior express invitation or permission).

34.     Prairie Pointe further alleges on information and belief that in each instance Defendants had actual notice of participation, or a high degree of involvement, in a plan to transmit unsolicited advertisements to telephone facsimile machines (by, for example, knowing the that the transmitted faxes were advertisements or participating in preparing their content, providing or obtaining the fax telephone number of Prairie Pointe or other recipients, and knowing that Plaintiff and/or other recipients had not authorized the faxes' transmission by prior express invitation or permission).

35.     Even if Defendant and Nexus are not *alter-egos* of each other, Pinksiy is still liable for the conduct giving rise to or constituting the violation under the TCPA on other grounds. First, Pinskiy and Nexus, acting as each other's agent, sent the faxes on Nexus's behalf with each other's full knowledge and endorsement. Second, under general principles of vicarious liability, Nexus provided Pinskiy actual or apparent authority to market Nexus's services (including sending the marketing faxes at issue), or otherwise ratified Pinskiy's issuance of these blast marketing faxes advertising Nexus's services.

36.    Prairie Pointe therefore alleges that Defendant violated 47 U.S.C. § 227 and 47 C.F.R. § 64.1200.

37.    Prairie Pointe suffered damages from the submission of these faxes, including but not limited to invasion of privacy, annoyance, the use and depletion of toner and ink, tying up of the fax line (preventing it temporarily from receiving legitimate fax communications), and the diversion of time and attention to the fax.

38.    Indeed, fax transmission is a HIPAA-complaint means for medical providers to send and receive personal health information. It is therefore important to medical providers, like the Plaintiff, to keep these lines open and uncluttered in the interest of patient care.

## CLASS ACTION ALLEGATIONS

39.    Pursuant to Fed. R. Civ. P. 23, Prairie Pointe brings this action on behalf of a putative Class of individuals defined as follows:

> All persons, natural or otherwise, in the United States and its territories who, (1) from February 13, 2019 to the present; (2) were sent one or more telephone facsimile transmissions by or on behalf of Nexus or Pinskiy; (3) which advertised the commercial business services offered by Nexus or Pinskiy, (4) and which did not fully comply with the opt-out requirements:

> Excluded from the Class are: (1) Nexus, Pinskiy, and any entity in which Nexus or Pinskiy has a controlling interest, and their legal representatives, officers, directors, assignees, and successors, and any co-conspirators; and (2) any judge or justice to whom this action is assigned, together with any relative of such judge or justice within the third degree of relationship, and the spouse of any such person.

Plaintiff reserves the right to amend this proposed class definition and to pursue certification under an amended class definition(s) as warranted.

40.    Prairie Pointe seeks certification of both a Rule 23(b)(3) damages class (for completed violations of the TCPA) and a Rule 23(b)(2) declaratory and injunctive relief class (as to ongoing or future violations of the TCPA by Defendants).

41.    The number of Class members is in the thousands.

42.     Prairie Pointe and all members of the putative Class have been harmed by Defendant's acts, including, but not limited to, the invasion of their privacy, annoyance, waste of time, depletion of their paper and ink, and the intrusion on their facsimile that occupied it from receiving legitimate communications.

37.     Upon information and belief, Prairie Pointe alleges that noncompliant facsimile advertisements sent on behalf of the Defendants to advertise their products and services have been transmitted to not thousands of telephone facsimile machines in Kansas and other states through an intentional and persistent course of conduct.  Each such transmission constitutes a separate violation of the TCPA.  Because the Class members are dispersed and are believed to number in the hundreds if not thousands, individual joinder is impractical in satisfaction of Fed. R. Civ. P. 23(a)(1).  The disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and to the Court.

38.     Prairie Pointe's claims are typical of the claims. of the Class, as required by Fed. R. Civ. P. 23(a)(3), in that Prairie Pointe received an unsolicited facsimile advertisement from Defendant advertising goods and services for a commercial purpose during the proposed Class Period.

39.     The factual and legal bases of Defendant's misconduct are common to all members of the Class and represent a common cause of injury to Prairie Pointe and the putative Class members.

40.     Numerous questions of law and fact are common to the putative Class and predominate over questions affecting only individual Class members, as required by Fed. R. Civ. P. 23(a)(2) and 23(b)(3).  Such common questions including, but are not limited to:

(1)    Whether Defendant had a business practice of sending unsolicited facsimile advertisements for its commercial goods and services in violation of the TCPA;

(2)    Whether the unsolicited facsimile advertisements sent by Defendant contained an fully compliant Opt-Out Notice;

(3)    Whether Defendant harmed Prairie Pointe and the Class;

(4)    Whether Prairie Pointe and the Class are entitled to damages and, if so, in what amount; and

(5)    Whether Prairie Pointe and the Class are entitled to equitable and/or injunctive relief.

41.    Prairie Pointe's claims are typical of the claims of the putative Class because they arise from the same course of conduct by Defendants and the relief sought is common.

42.    The Class is ascertainable, as the Class is defined using objective criteria and Class Members who received unsolicited facsimile advertisements from Defendant are easily identifiable based on existing telephone and other records maintained by and/or under the control of Defendant tracking their blast fax marketing activity.

43.    Prairie Pointe will fairly and adequately represent and protect the interests of the Class, as required by Fed. R. Civ. P. 23(a)(4).  Moreover, Prairie Pointe has retained counsel with substantial experience in the prosecution of nationwide class actions.  Prairie Pointe and his counsel are committed to the vigorous prosecution of this action on behalf of the Class and have the financial resources to do so.  Neither Prairie Pointe nor its counsel has any interests adverse to those of the Class.

44.    As to Rule 23(b)(2), Defendant has acted and continues to act in a manner common to the Class, namely the continued mass distribution of faxes that are non-compliant with the TCPA, such that equitable relief on a class basis is warranted.

## CAUSES OF ACTION

## FIRST COUNT

## VIOLATIONS OF THE TELEPHONE
## CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ.*

45.     Prairie Pointe incorporates by reference the foregoing and subsequent paragraphs of this Complaint as if fully stated herein.

46.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

47.     Defendant's violations of the TCPA alleged herein were knowing and willful.

48.     As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Prairie Pointe and each member of the Class are entitled to damages of at least $500 per violation, which may be trebled to $1,500 per violation under 47 U.S.C. § 227(b)(3) for knowing and willful violations.

49.     Prairie Pointe and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future.  Prairie Pointe and Class members are also entitled to an award of attorneys' fees and costs.

50.     As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Prairie Pointe and Class members are entitled to an award of $500.00 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

51.     Prairie Pointe and Class members are also entitled to and do seek injunctive relief prohibiting Defendant's violation of the TCPA in the future.

## SECOND COUNT

## CIVIL CONSPIRACY TO VIOLATE THE TELEPHONE
## CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ*.

52.     Prairie Pointe incorporates by reference the foregoing and subsequent paragraphs of this Complaint as if fully set forth herein.

53.     Defendant agreed with Nexus and the John Doe Defendants to violate the TCPA and injure Prairie Pointe and Class members by conducting an illegal facsimile advertisement campaign to encourage Kansas residents to purchase Defendants' products and services.

54.     Defendants created a website, directed and approved a facsimile to be sent to unsuspecting recipients, supervised the transmission thereof, and/or paid for these services, achieving the outcome of generating awareness of their services.

55.     Defendants met in person and/or communicated by phone and email to achieve the objectives of the conspiracy.

56.     Prairie Pointe and Class members were injured by the conspiracy in the form of the annoyance, burden, time, and expense of dealing with the unwanted, illegal facsimiles.

## PRAYER FOR RELIEF

WHEREFORE, Prairie Pointe respectfully requests that the Court grant Prairie Pointe and all putative Class members the following relief:

(1)    An order certifying this case as a class action under Rule 23, including Certification of an appropriate Class(es) or Subclass(es) (subject to any further amendment or tailoring of an appropriate class definition) under Rules 23(b)(2) (for declaratory and injunctive relief) and Rule 23(b)(3) (for damages relief), including an appointment of Prairie Pointe as class representative and undersigned counsel as class counsel.

(2)    Declaratory relief that Defendant's faxes violated and continue to violate the TCPA, along with associated injunctive relief prohibiting violations of the TCPA by Defendants in the future;

(3)    Under Count I, judgment in favor of Prairie Pointe and the Class against Defendant, in an amount of $500.00 for each fax transmission in violation of the Telephone Consumer Protection Act, as well as trebling to $1,500 per violation for willful and knowing violations.

(4)    Under Count II, appropriate relief to the extent allowable by law, including but not limited to damages, declaratory relief, and injunctive relief.

(5)    An award of attorneys' fees and costs to counsel for Prairie Pointe and the Class; and

(6)    Such other relief as the Court deems just and proper.

Respectfully Submitted,

BEAM-WARD, KRUSE, WILSON & FLETES, LLC

/s/ Richard S. Fisk
RICHARD S. FISK, KS 23712
8645 College Blvd., Suite 250
Overland Park, Kansas 66210
913-339-6888/ 913-339-9653 facsimile
rfisk@bkwflaw.com
*Attorneys for Prairie Pointe*
*and the Proposed Class*